IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| DENIS MEJIA-ARITA, | ) | |
| Petitioner, | ) | |
| v. | ) | Civil Action No. 1:26-cv-2889 (RDA/WBP) |
| MARKWAYNE MULLIN, *et al.*, | ) | |
| Respondents. | ) | |

**ORDER**

This matter comes before the Court on Petitioner Denis Mejia-Arita's ("Petitioner") Amended Petition for Writ of Habeas Corpus ("Amended Petition") (Dkt. 7) seeking release from Immigration and Customs Enforcement ("ICE") custody. This matter has been fully briefed, and this Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). For the reasons set forth below, the Court GRANTS-IN-PART and DENIES-IN-PART the Petition.

I. BACKGROUND

Petitioner is a native and citizen of Honduras who entered the United States in April 2007 when he unlawfully crossed the Texas-Mexico border. Dkt. 8-2 ¶¶ 5-6. On April 6, 2007, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear charging him with being inadmissible to the United States under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. *Id.* ¶ 7. On March 6, 2008, Petitioner was ordered removed to Honduras in *absentia*. *Id.* ¶ 9.

In November 2009, Petitioner was encountered in the Prince William-Manassas Adult Detention Center. *Id.* ¶ 10. He was taken into immigration custody based on the 2008 order of removal. *Id.* On December 29, 2009, DHS issued a Form I-205, Warrant of Removal. *Id.* ¶ 11.

On January 29, 2010, Petitioner was removed from the United States to Honduras. *Id.* ¶ 12.

Petitioner then re-entered the United States at an unknown date and location. *Id.* ¶ 13. On August 8, 2023, Petitioner was encountered at the Rappahannock Regional Jail after he was arrested for driving under the influence. *Id.* ¶ 14. That same day, he was served with the Notice of Decision to Reinstate Prior Order and Form I-205 Warrant of Removal. *Id.* Petitioner then expressed a fear of return to Honduras and was referred for a reasonable fear interview. *Id.*

On August 21, 2023, Petitioner was interviewed by USCIS. *Id.* ¶ 15. That same day, USCIS issued a negative reasonable fear determination. *Id.* Petitioner then requested Immigration Judge review. *Id.* On August 28, 2023, an Immigration Judge vacated USCIS's decision and Petitioner was placed into withholding-only proceedings. *Id.* ¶ 16.

On October 26, 2023, Enforcement and Removal Operations ("ERO") released Petitioner on an Order of Supervision ("OSUP"). *Id.* ¶ 17.

On December 5, 2024, an Immigration Judge granted Petitioner withholding of removal to Honduras. *Id.* ¶ 18. Neither party appealed the order. *Id.*

On August 31, 2026, ERO arrested Petitioner at an ICE check after "determining [that] he was amenable to third country removal to Mexico." *Id.* ¶ 19. Petitioner was issued a Notice of Revocation of Release signed by an Assistant Field Office Director ("AFOD") and given an informal interview to respond to the reasons for revocation of release. *Id.* The AFOD revoked Petitioner's OSUP under 8 U.S.C. § 241.13, finding significant likelihood of removing the detained alien in the reasonably foreseeable future. *Id.* Petitioner was also served with a Notice of Removal to Mexico and a Warrant of Removal/Deportation. *Id.* Petitioner expressed fear of removal to Mexico and then was referred to USCIS for third country screening. *Id.*

On September 4, 2026, Petitioner was scheduled for a third country screening with USCIS,

which was adjourned at Petitioner's request. *Id.* ¶ 20. On September 9, 2026, USCIS determined that Petitioner did not establish that it is more likely than not that he will be persecuted or tortured in Mexico. *Id.* ¶ 21.

Acting AFOD Justin Richardson asserts that: "Removals of Honduran citizens to Mexico are being conducted under a process that does not require pre-approval by the government of Mexico. Rather, aliens are presented at the U.S.-Mexico border for acceptance and a determination is made at the location and[,] in at least 2026, Mexico is routinely accepting Central Americans for removal." *Id.* ¶ 22.

On September 1, 2026, Petitioner filed his original Petition. Dkt. 1. On September 4, 2026, Petitioner filed a Consent Motion for a Briefing Schedule on Petitioner's Forthcoming Amended Petition (Dkt. 4),seeking to amend his original Petition and set a briefing schedule, which the Court granted (Dkt. 6). On September 11, 2026, Petitioner filed his Amended Petition. Dkt. 7. On September 25, 2026, Respondents filed their Opposition. Dkt. 8. On September 30, 2026, Petitioner filed his Reply. Dkt. 9. Now that this matter has been fully briefed and is ripe for disposition, the Court dispenses with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J).

## II. LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. "[T]he heart of habeas corpus," the Supreme Court has noted, is to allow a detainee to "challeng[e] the fact or duration of his physical

confinement," and to "seek[] immediate release or a speedier release from that confinement." *Preiswer v. Rodriguez*, 411 U.S. 475, 498 (1973).

## III. DISCUSSION

Petitioner argues that his continued detention: (i) violates 8 U.S.C. § 1231(a)(6), *Zadvydas v. Davis*, 533 U.S. 678 (2001), and due process (Claims 1 and 2); (ii) violates the *Accardi* doctrine, and due process (Claim 3); and (iii) violates due process with respect to any third country removal without Immigration Judge ("IJ") review. Dkt. 7. Respondents oppose granting the Amended Petition. Dkt. 8. The Court will address each argument in turn.

### A. Section 1231

8 U.S.C. §1231(a) requires the Government to detain noncitizens during the "removal period," which is defined as the 90-day period during which "the Attorney General shall remove the alien from the United States." 8 U.S.C. §1231(a)(1)(A). That period commences upon one of three occasions: "(i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B). Detention after the end of the removal period is governed by 8 U.S.C. § 1231(a)(6), which states that inadmissible aliens "may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision."

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court determined that indefinite detention under 8 U.S.C. § 1231 would raise "serious constitutional concerns" and construed the statute to contain "an implicit 'reasonable time' limitation, which is subject to federal-court review." *Id.* at 682. The Supreme Court also found that there was a "presumption" that detention

for six months was reasonable and that, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Here, the statutory removal period has expired, but Petitioner has not been detained for more than six months, which the Supreme Court established was a reasonable period in *Zadvydas*. As the Fourth Circuit has recognized, "the *Zadvydas* standard *is* due process" such that "a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation." *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) (emphasis in original). Petitioner is correct, of course that the clock does not reset to zero when there is a period of detention, a release, and then a re-detention. *See Diop v. Mullin*, 2026 WL 1755166, at *3 (E.D. Va. June 17, 2026). On the other hand, *Zadvydas* provides that six months of detention is presumptively reasonable and Petitioner has not been detained in excess of six months. Of course, *Zadvydas* provides a presumption, and a presumption may be rebutted. But Petitioner has not done so here. In this proceeding, Respondents have made representations that they are actively seeking a third country for removal. Dkt. 6 at 5. Before the expiration of the presumptive detention period under *Zadvydas*, such steps and representations are sufficient, and Petitioner has failed to carry his burden to overcome the presumption. Even if Petitioner intends to pursue additional proceedings before an IJ regarding his asserted fear of removal to the designated third country, the Fourth Circuit has been clear that such proceedings alone are insufficient to demonstrate that removal is not foreseeable. *Castaneda*, 95 F.4th at 758 (recognizing that "ongoing withholding-only proceedings alone are insufficient to demonstrate that removal is no longer reasonably foreseeable"). Accordingly, Petitioner has failed to carry his burden to establish any violation at this time, and his Amended Petition will be denied on this basis.

B. *Accardi* Doctrine

Next, Petitioner claims that the revocation of his OSUP was improper. An agency's failure to follow those regulations "may result in the invalidation of the ultimate administrative determination." *United States v. Morgan*, 193 F.3d 252, 266 (4th Cir. 1999). Ordinarily, an agency's failure to follow its regulations will only render its determination invalid if an individual can demonstrate that they were prejudiced by the deviation. *Id.* at 267. Prejudice, however, may be presumed where "compliance with the regulation is mandated by the Constitution and where an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency." *Santamaria Orellana v. Baker*, 2025 WL 2444087, at *5 (D. Md. Aug. 25, 2025) (internal quotation marks omitted).

The INA regulations govern when an OSUP can be created or revoked. Under 8 C.F.R. § 241.13, DHS may release a noncitizen "based on a determination that there is no significant likelihood of removal to the country to which [the noncitizen] was ordered removed, or to a third country, in the reasonably foreseeable future." *Id.* (internal quotation marks omitted). Section 241.13(i)(2) permits revocation only where, "on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). This means that, for aliens under Section 241.13, Respondents must demonstrate that, "because of changed circumstances, . . . there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.4(b)(4). Thus, unlike a *Zadvydas* claim, the regulation makes it Respondents' burden to identify the changed circumstances and the significant likelihood of removal in the reasonably foreseeable future. *Gonzales Reyes v. Blanche*, 2026 WL 1723946, at *1-2 (D. Md. June 15, 2026).

Here, the Notice of Revocation provides: "Your release has been revoked pursuant to 8

C.F.R. § 241.13(i), for the following reason(s) . . . Circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future. . . . On 12/05/2024, you were ordered removed to Honduras, but you were granted withholding of removal to Honduras. Your case is under review for removal to an alternate country." Dkt. 8-1. The Notice thus does not identify any third country to which Petitioner would be removed. As this Court has previously recognized, such statements are inadequate. *See Kassye v. Mullin*, 2026 WL 1832368, at *4 (E.D. Va. June 24, 2026) (citing cases). Neither the Notice nor the written summary of the informal interview give any indication that Petitioner was informed that he would be removed to Mexico. Dkts. 8-1, 8-3. Although Richardson's Declaration suggests that Petitioner expressed that he was "amenable to third country removal," Dkt. 8-2 ¶ 18, it is not apparent how that was made clear, as it is not documented in the Notice and Petitioner apparently immediately expressed fear of removal to Mexico, Dkt. 8-1 (not mentioning Mexico); Dkt. 8-2 ¶ 18 ("Petitioner expressed fear of removal to Mexico."). And, as this Court recently held, assertions regarding the routine nature of Central American citizens being accepted for removal to Mexico, "do not establish that Petitioner's removal has become significantly likely in the reasonably foreseeable future." *Moralez Molina v. Perry*, No. 1:26-cv-2625, Order, dated September 17, 2026 (E.D. Va.). Moreover, as recounted by other district judges in this District, even when a petitioner is walked across the border into Mexico, there have been occasions where Mexico has refused to accept such individuals and walked them back. *See, e.g.*, *Garcia Cruz v. Hott*, 2026 WL 1103566, at *2 (E.D. Va. Apr. 23, 2026) (after petitioner was walked across the U.S.-Mexico bord, "the Mexican officer walked Petitioner and two men from Guatemala back across the U.S. border while everyone from the bus who was Mexican stayed in Mexico").

In short, Respondents' failure to comply with the regulation governing Petitioner's re-

detention renders the revocation invalid under the *Accardi* doctrine. Thus, because Respondents have failed to follow § 241.13 in revoking Petitioner's OSUP and detaining him, and because that regulation was promulgated to protect Petitioner's right to due process, Petitioner's current detention is unlawful, and he is entitled to immediate release.

C. Third Country Removal

Respondents have acknowledged that courts "have allowed habeas challenges wherein habeas was the only cause of action available." *Ramirez-Giron v. Simon*, No. 26-cv-388, Dkt. 15, Order dated April 15, 2026 (E.D. Va.). Indeed, the Supreme Court has explained that challenges that "imply the invalidity" of "removal" can "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). The Supreme Court expressly held that "immediate physical release [is not] the only remedy under the federal writ of habeas corpus." *Id.* (alterations in original). Thus, this matter is properly raised in habeas.[1]

The Court also considers whether it has jurisdiction over Petitioner's claim under 8 U.S.C. § 1252(g). The Court finds that it does, because Section 1252(g) "applies only to three discrete actions that the Attorney General may take: her decision or action to commence actions, adjudicate

---

[1] The Supreme Court's decision in *DHS v. Thuraissigiam*, 591 U.S. 103 (2020) does not require otherwise. In *Thuraissigiam*, the Supreme Court recognized the proposition that habeas does not extend to aliens seeking "the opportunity to remain lawfully in the United States." *Id.* at 119-20. But that principle does not apply here, where Petitioner's habeas claims do not relate to any ability to remain in the United States and are concentrated on the process available to him regarding DHS's decision to send him to a third country. Furthermore, in *Thuraissigiam*, the petitioner was in expedited removal proceedings and *obtained Immigration Judge review* of his credible fear allegations. 591 U.S. at 114 (noting that "an Immigration Judge affirmed on *de novo* review and returned the case to the Department for removal"). Instead of obtaining an initial review of his credible fear allegations, the petitioner in *Thuraissigiam* was attempting to reopen his credible fear proceedings to assert a *new* fear of persecution not previously raised. *Id.* The Supreme Court sensibly rejected such a second bite at the apple. Here, Petitioner seeks a first bite of the apple because he has not yet had immigration judge review of his removal to a third country. Accordingly, *Thuraissigiam* does not preclude a review of the circumstances here.

cases, or execute removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (internal citations omitted).

Having determined that this Court has jurisdiction to consider Petitioner's habeas claim, the Court next turns to the merits of Petitioner's argument. As an initial matter, the Court notes that a number of judges in this Circuit, including this District Judge, have determined that, as a matter of procedural due process, aliens are entitled to IJ review of a negative fear determination by an immigration officer. *See Bautista Serpas v. Simon*, No. 1:25-cv-02369 (E.D. Va. Feb. 3, 2026) (Trenga, J.); *Juarez Villatro v. Noem*, No. 1:25-cv-2359 (E.D. Va. Jan. 6, 2026) (Trenga, J.); *Rivas-Rojas v. Noem*, No. 1:25-cv-1624 (E.D. Va. Nov. 17, 2025) (Giles, J.); *Samadov v. Hott*, No. 1:25-cv-1441 (E.D. Va. Jan. 22, 2026) (Giles, J.); *Cruz Medina v. Noem*, 2025 WL 2841488, at *7 (D. Md. Oct. 7, 2025); *Palacios v. Mullin*, 2026 WL 933319, at *8 (D. Md. Apr. 7, 2026); *Ramirez-Giron v. Simon*, No. 26-cv-388, Dkt. 15, Order dated April 15, 2026 (E.D. Va.).

The Court begins with a discussion of the background principles against which the Court analyzes the arguments made here. "The procedural component of due process 'imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause.'" *D.B. v. Cardall*, 826 F.3d 721, 741 (4th Cir. 2016). Further, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *J.G.G.*, 604 U.S. at 673 (internal quotations omitted). Under the Immigration and Nationality Act (the "INA"), a noncitizen may be removed to: (i) a country where they are a citizen, subject, or national; (ii) a country where they were born; (iii) a country where they have a residence; or (iv) a country with a government that will accept the alien if removal under (i)-(iii) is unavailable. 8 U.S.C. § 1231(b). A "withholding of removal order [is] country specific." *Abrego Garcia v. Noem*, 2025 WL 1021113, at *6 (4th Cir. Apr. 7,

2025) (Wilkinson, J., concurring). Indeed, the Fourth Circuit has recognized that, "because withholding of removal is country-specific, as the government says, if a noncitizen who has been granted withholding as to one country faces removal to an alternative country, then she must be given notice and an opportunity to request withholding of removal to *that* particular country." *Guzman Chavez v. Hott*, 940 F.3d 867, 879 (4th Cir. 2019), *rev'd on other grounds sub nom. Johnson v. Guzman Chavez*, 594 U.S. 523 (2021).

Turning to the applicable statutory provisions, in Section 1231(b)(3) of the INA, Congress has specifically restricted "Removal to a Country Where [an] Alien's Life or Freedom Would be Threatened." More specifically, it provides that "the Attorney General may not remove an alien to a country *if the Attorney General* decides that the alien's life or freedom would be threatened in that country." 8 U.S.C. § 1231(b)(3) (emphasis added). Under the INA's implementing regulations, noncitizens are entitled to credible fear or reasonable fear screenings under certain circumstances. 8 C.F.R. §§ 208.16(a), 208.30(a), 208.31(a). Section 208.16 applies to the original withholding of removal proceedings, in which Petitioner successfully obtained withholding of removal to Ethiopia. Section 208.30 applies to expedited removal proceedings and noncitizen stowaways, while Section 208.31 applies to expedited removal proceedings relating to persons convicted of aggravated felonies or those with a reinstated removal order. Thus, no particular regulation appears to address Section 1231(b)(3)'s mandate that an alien not be removed to a country of which they have a credible fear.

In the first instance, the Court notes that immigration judges are employees of the Department of Justice. *See United States v. Moriello*, 980 F.3d 924, 936 n.3 (4th Cir. 2020); *Selgeka*, 184 F.3d at 344 ("Unlike asylum officers who are employees of the INS, immigration judges are independent of the INS."); *Shoukat v. Attorney General*, 151 F. App'x 110, 112 (3d Cir.

2005) ("First, unlike an asylum officer who is an employee of the INS (now the DHS), an IJ is independent of the INS."). Section 1231(b)(3)(A) specifically notes that the Attorney General must find that an alien has no credible fear. It is unclear what part of the proceedings here reflect a decision by the Attorney General. Furthermore, Section 1231(b)(3)(C) provides that to determine whether an "an alien has demonstrated that the alien's life or freedom would be threatened . . . the *trier of fact* shall determine whether the alien has sustained the alien's burden of proof . . . *in the manner* described in clauses (ii) and (iii) of section 1158(b)(1)(B) of this title." 8 U.S.C. 1231(b)(3)(C) (emphasis added). Section 1158 provides for the taking of testimony as well as "other evidence of record." 8 U.S.C. § 1158(b)(1)(B)(ii)-(iii). Whether an asylum officer constitutes a "trier of fact" for purposes of Section 1231(b)(3) appears to be an open question (and, again, it is unclear how an interview by a DHS employee could make a finding for the Attorney General). The only case that appears to have directly addressed the issue determined that it did not matter whether the asylum officer was a trier of fact, because there was review by an Immigration Judge. *See Alsonso-Juarez v. Garland*, 80 F.4th 1039, 1055 (9th Cir. 2023) ("But even if we were to suppose that Congress did intend the term 'trier of fact' to refer to an IJ and not an asylum officer, the reasonable fear regulations provide for de novo determination by an IJ of the merits of all noncitizens' withholding-only claims."). The Fourth Circuit's decision in *Selgeka*, which appears to be the most on-point decision, in the context of refugee applications, specifically rejected the government's claim that an interview before an asylum officer was sufficient for purposes of Section 1158. 184 F.3d at 344. In particular, the Fourth Circuit took note of the fact that the government's interpretation of the regulations "denied stowaways the rights of other asylum applicants." *Id.* at 344 (citing *Marincas v. Lewis*, 92 F.3d 195, 200-01 (3d Cir. 1996)).

Applying the principles that the Fourth Circuit relied upon in *Selgeka* here, the Court finds

that upon the designation of a third country for removal, Petitioner has a due process right to review of the negative credible fear determination by an immigration judge. As a review of the DHS regulations reveals, in almost all other circumstances where an alien raises a potential credible fear of removal to a particular country, there is review by an immigration judge. 8 C.F.R. § 208.30(g) (providing that the asylum officer "shall inquire whether the alien wishes to have an immigration judge review the negative decision, which shall include an opportunity for the alien to be heard and questioned by the immigration judge"); 8 C.F.R. § 208.31(g) ("The asylum officer's negative decision regarding reasonable fear *shall be* subject to review by an immigration judge . . . ." (emphasis added)); *see also* 8 C.F.R. § 208.16(a) (providing for immigration judge review in initial withholding proceedings). Indeed, there are *no regulations* "that provide for a circumstance under which USCIS is given the authority to conduct fear-screening interviews without provided for independent review of that screening by an IJ." *Sagasizado v. Noem*, 802 F. Supp. 3d 992, 1010 (S.D. Texas 2025); *see also Cruz Medina*, 2025 WL 2841488, at *7 ("The Court need look no further than DHS regulations themselves to conclude that, where a person alleges that he would be persecuted or tortured if removed to a particular country, a single review by an asylum officer creates an unacceptably high risk of erroneous deprivation."). As the Fourth Circuit has emphasized, "the prohibition on removal to a country where a noncitizen would face persecution or torture remains absolute" and is "country specific." *Guzman Chavez*, 940 F.3d at 879. Section 1231(b)(3) and Section 1158 of the INA require that a trier of fact make specific findings based on testimony and other evidence, which would appear to plainly require a more formalized setting than the information interview with an asylum officer that took place here.

An example by way of hypothetical reveals why this is the only sound decision to be reached. Consider that Country A and Country B are neighboring countries who have jointly

agreed to persecute and jail all members of a particular religious group. An Alien is a member of this religious group and flees Country A for the United States. The Alien is placed in removal proceedings. An Asylum Officer determines that the Alien has no credible fear of returning to Country A, but the Alien obtains review of that decision by the Immigration Judge who ultimately determines that his fear is credible and issues withholding of removal to Country A. DHS then determines that Country B is willing to accept the Alien and issues a Notice of Third Country Removal. The Alien claims a credible fear and is again before the Asylum Officer who determines that such fear is not credible—relying on the same evidence that the Immigration Judge had previously determined was credible. But no review is available for the Asylum Officer's second credible fear determination and so, in this way, DHS is able to circumvent the Immigration Judge's holding and remove the Alien to Country B despite the Immigration Judge previously finding that there was a credible fear based on the same policy and the same evidence, just with respect to a neighboring country. This cannot comport with the requirements of Sections 1231 and 1158, nor can it comport with due process.

With respect to an analysis of the *Mathews v. Eldridge* factors,[2] the Court incorporates the well-reasoned analysis performed by the various judges in this District and the District of Maryland who have analyzed these same circumstances and determined that procedural due process requires review by an Immigration Judge. *See, e.g.*, *Bautista Serpas v. Simon*, No. 1:25-cv-02369 (E.D. Va. Feb. 3, 2026) (Trenga, J.); *Juarez Villatro v. Noem*, No. 1:25-cv-2359 (E.D. Va. Jan. 6, 2026) (Trenga, J.); *Cruz Medina v. Noem*, 2025 WL 2841488, at *7 (D. Md. Oct. 7, 2025); *Palacios v. Mullin*, 2026 WL 933319, at *8 (D. Md. Apr. 7, 2026). In sum, as a matter of

[2] 424 U.S. 319, 332 (1976).

procedural due process, Petitioner is entitled to Immigration Judge review of his negative fear determination as provided for in the regulations governing the analogous context. 8 U.S.C. §§ 208.30, 208.31. Accordingly, the Amended Petition will be granted in this regard.

## IV. CONCLUSION

For all of the reasons above, it is hereby ORDERED that the Amended Petition (Dkt. 7) is GRANTED-IN-PART and DENIED-IN-PART. The Amended Petition is granted with respect to Claims 3 and 4 and is denied in all other respects; and it is

FURTHER ORDERED that Petitioner be RELEASED pursuant to his prior Order of Supervision no later than Friday, October 9, 2026, by 5:00 p.m. with all his personal property; and it is

FURTHER ORDERED that, within twenty-four (24) hours of Petitioner's release, Petitioner provide his address of residence to the local ICE office and to Respondents; and it is

FURTHER ORDERED that Respondents are DIRECTED to file a notice with the Court on or before Tuesday, October 13, 2026, confirming Petitioner's Release and providing his address of residence; and it is

FURTHER ORDERED that Respondents are ENJOINED from revoking Petitioner's Order of Supervision unless it done in compliance with the requirements of Section 241.13; and it is

FURTHER ORDERED that Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are ENJOINED from removing Petitioner to a third country unless he has first received review by an Immigration Judge pursuant to 8 C.F.R. § 208.31(g) of the asylum officer's negative credible decision and that the requirements of Section 208.31(g) are satisfied; and it is

FURTHER ORDERED that the prohibition on Petitioner being removed from this District in the September 2, 2026 Order (Dkt. 2) is LIFTED.

The Clerk of the Court is directed to provide this Order to all counsel of record and to place this matter among the ended causes.

It is SO ORDERED.

Alexandria, Virginia
October 7, 2026

/s/

Rossie D. Alston, Jr.
United States District Judge